Candace S. (Losey) GRISSOM, Plaintiff,

Tony Jay Grissom, Rachel Lee Grissom, and Rebecca J. Grissom, Appellants,

Lewis Pitts, Appellant,

v.

Randall J. GRISSOM, Respondent,

Division of Family Services, Defendant.

Nos. WD 48552, WD 48553.

Missouri Court of Appeals, Western District.

Aug. 2, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1994.

Application to Transfer Denied Nov. 22, 1994.

P. Lewis Pitts, Jr., Durham, NC, Keith Brunstrom, Jefferson City, for appellants Grissom.

P. Lewis Pitts, Jr., Durham, NC, David A. Masters, Macon, Keith W. Brunstrom, Jefferson City, for appellant Pitts.

Keith W. Brunstrom, Jefferson City, for amici curiae Nat. Task Force for Children's Constitutional Rights, Nat. Ass'n of Counsel for Children, Center for Constitutional Rights, Child Advocacy Law Clinic.

Before LOWENSTEIN, P.J., and BERREY and SPINDEN, JJ.

SPINDEN, Judge.

This appeal stems from a contempt proceeding in which the trial court refused to let a divorced couple's children participate in the proceedings even though their custody could have been affected. We affirm in part and reverse in part.

### Facts

Candace Losey[1] and Randall Grissom's marriage was dissolved on August 13, 1990. The couple had four children. The three oldest are involved in this appeal: Tony, born on December 23, 1976; Rachel, born on July 11, 1978; and Rebecca, born on January 23, 1981. A fourth child, Nicholas, is not an

---

1. Candace Grissom retained her maiden name after the divorce, so we will refer to her by that name, Losey.

appellant. Extensive litigation ensued between the original divorce decree and the contempt proceeding which serves as the basis of this appeal. We set forth the relevant events.

After the court modified the original divorce decree, Losey had physical custody of the children. Grissom had visitation rights. In August 1991, Grissom asked the court to hold his ex-wife in contempt for interfering with his visitation rights. This action was resolved by a written stipulation in which the parties made agreements regarding counseling and visitation.

In March 1992, Grissom again asked the court to hold his wife in contempt for interfering with visitation. Losey's attorney, David Masters, asked for a change of judge in April 1992. The trial judge denied the request. Masters sought a writ of prohibition, and this court denied it. Masters then withdrew as Losey's attorney on August 4, 1992.

The trial court heard testimony on the motion for contempt on September 30, 1992; on December 17, 1992; and on April 29, 1993. During the hearings, the children testified that their mother did not prevent them from visiting their father, but urged them to do so. They said that they refused to visit their father because his behavior frightened them. They said that they saw him drunk several times and that he took pills which made him sleepy. They said they also found pornography among his belongings. Rachel said her father "sexually molested" her and her sister. They said that their father was physically violent towards their mother and that he threatened to kill her. A psychologist who had counseled the three oldest children and Grissom testified that court-mandated visitation would be counter-productive because of the children's antagonistic feelings toward their father.

On May 13, 1993, the trial court found Losey in contempt on the ground that she "interfered with [Grissom's] visitation with the parties' children and has failed to arrange counseling between the children and

[their father], in willful and contumacious violation and disregard of the Court's previous orders." The trial court found that making the children wards of the court and placing them in the legal custody of the Division of Family Services was in their best interests. The court permitted Losey to retain physical custody of the children so long as she complied with the court's orders. The court ordered bi-monthly counseling sessions between the three oldest children and their parents. Visitation between the children and their father was to resume after the children and their father had completed three joint counseling sessions. The court ordered DFS to arrange, supervise, and monitor visitation and counseling.

Losey filed a motion for a new trial. The trial court denied it, and she filed a notice of appeal.

The children retained Masters and Lewis Pitts as their attorneys. On July 19, 1993, the children filed a motion to intervene in Losey's appeal, but the trial court denied it. The children sought a writ of prohibition in this court, seeking a stay of the contempt order so far as it placed the children in the legal custody of DFS. Grissom moved for dismissal, which was sustained by this court without opinion.[2] The children asked for a writ of prohibition from the Missouri Supreme Court. The Supreme Court also dismissed the case without an opinion.[3]

On August 16, 1993, Grissom again asked the court to hold Losey in contempt. He alleged that she interfered with his visitation rights and refused to allow the children to attend counseling sessions. The trial court ordered Losey to show cause at a hearing on August 31, 1993, why it should not find her in contempt.

On August 27, 1993, the children asked to intervene in the contempt proceeding and asked for a continuance of the hearing because one of their attorneys, Masters, could not attend the hearing. On August 31, 1993, before the hearing, the children filed a motion to disqualify the trial judge. Also on the morning of August 31, 1993, Grissom filed a

---

2. Judge Kennedy dissented in that order.

3. In the same order, the Supreme Court sustained DFS' motion to intervene.

motion for sanctions against Pitts and Masters for violating Rule 55.03.[4]

At the hearing, the trial court denied the children's motion to intervene because "[t]he children do not have authority to employ an attorney." The trial court concluded, "The Motion to Intervene, then, must be dismissed, and of course the Motion to Disqualify, obviously then, is dismissed as well." The trial court found that Masters had a conflict of interest and was not qualified to represent the children. The trial court decided that Pitts, as an out-of-state lawyer, was also disqualified because his appearance depended on Masters' standing as a Missouri lawyer. After hearing evidence, the trial court ordered Pitts and Masters to pay Grissom $200 as a sanction for violating Rule 55.03.

Grissom and Losey entered into a stipulation which the court adopted in its order.[5] The trial court ordered transfer of the children's legal custody to Grissom and Losey and gave Losey physical custody. Grissom was to have custody of Nicholas two weekends a month and custody of the other children one weekend a month, as well as visits during holidays. Counseling between Grissom and the three oldest children was to continue at least once a month. Losey agreed to dismiss her appeal of the May contempt order and to pay a debt originally assigned to Grissom in the divorce decree. The trial court waived the civil fine it assessed against Losey pursuant to the May contempt ruling. It ordered law enforcement agencies to assist either party in enforcing the custody agreement. Grissom agreed not to bring another motion for sanctions against his ex-wife.

Pitts and Masters appealed the sanction assessed against them. The children filed a separate appeal. *Amicus curiae* briefs have been filed by four parties: the National Task Force for Children's Constitutional Rights, the National Association of Counsel for Children, the Center for Constitutional Rights, and the Child Advocacy Law Clinic. Grissom did not file a brief or make oral argument.

The children allege four points of error.[6] They contend that (1) the trial court erred in concluding that the children lacked legal capacity to employ an attorney; (2) the trial court's finding that Masters had a conflict of interest was error; (3) the trial court should have transferred the motion to intervene and the motion to disqualify the judge to an unbiased judge; and (4) the trial court erred by not appointing a guardian ad litem.

Pitts and Masters assert error in the trial court's decision to hear and rule on the motion for sanctions and its finding that the attorneys violated Rule 55.03. They also argue that the trial court should have disqualified itself because the court engaged in *ex parte* communications before the hearing.

The *amicus curiae* assert one point of error. They contend that the trial court erred in granting the motion for sanctions.

### Standing to Appeal

Before addressing the points raised by the children on appeal, we note that Rule 52.02 requires that, when no guardian ad litem has been appointed, civil actions by minors may be commenced only by a next friend. *See also* § 507.110, RSMo 1986. A next friend is an officer of the court whose duty is to guard the interests of the plaintiff infant. *Craw-*

---

4. Subsection (b) of that rule provides, "By presenting or maintaining a claim, defense, request, demand, objection, contention, or argument in a pleading, motion, or other paper filed with or submitted to the court, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]" Subsection (c) authorizes sanctions for violating Rule 55.03.

5. The order, dated August 31, 1993, was certified by the clerk of the court on November 2, 1993, and was recorded in the docket sheet as filed on September 23, 1993.

6. The children have a fifth point relied on–that "the court should not honor traditions which fail to respect the human dignity of children and therefore conflict with fundamental constitutional principles." We need not reach that point in this ruling.

ford v. Amusement Syndicate Co., 37 S.W.2d 581, 584 (Mo.1931). Although the children make much of the fact that no guardian ad litem was appointed for them, they continued with their suit without a next friend. This, however, was not made an issue on appeal and was not addressed by the trial court. Even if the children had followed Rule 52.02, we find their claims to be meritless.

### The Children's Motions

The children allege that the trial court erred in overruling their motions to intervene, for a continuance, and to disqualify the judge. The court's announced reason for overruling the motions was that the children did not have the capacity to employ counsel or to intervene directly.

As is required of the trial court, we are also primarily concerned with the best interests of the Grissom children. Keeping that in mind, we are required to affirm a trial court's decision if it has any valid basis. We conclude that the trial court correctly overruled the children's motions. We do not rule on the issue pressed by the children that they "have the right to retain counsel to defend them against threats of state action to remove them from their home." We need not reach that issue.

### a. Motion to Intervene

■ We will review a trial court's denial of a motion to intervene only if the intervention qualifies as mandatory and not permissive. *Ratermann v. Ratermann Realty & Investment Company*, 341 S.W.2d 280, 286 (Mo. App.1960). Section 507.090(2), RSMo 1986, provides that the children could intervene as a matter of right only if their mother, as a party in the original case, was inadequately representing their interests and if they were bound by the judgment in the contempt hearing.

■ The children had no interest in the contempt hearing that intervention is intended to protect. To have an interest, as that term is used in § 507.090.1, the children must have a legal right which is directly affected, enlarged, or diminished by the judgment in the existing case. *Laclede Gas*

*Company v. Abrahamson*, 296 S.W.2d 100, 102 (Mo.1956). The effect of the judgment on the intervenor must be so direct and immediate that the intervenor will either gain or lose by direct operation of a judgment in the existing case. *Id.*

■ The children assert their right to remain in their mother's custody was affected. We disagree. Even had the court concluded in the contempt proceedings that a change of custody was necessary, the court could not have instantly acted upon that conclusion. A trial court can modify custody only after a hearing *on that issue. See State ex rel. Perrella v. McGuire*, 757 S.W.2d 223, 225 (Mo.App.1988).

Of more significance is that their mother adequately represented their interests. The interests of Losey and the children were the same. Losey did not want to be held in contempt. The children did not want her to be held in contempt. A finding of contempt against their mother would be the catalyst, they argue, for transferring their custody to DFS. The children, if allowed to intervene, would be arguing for the same result Losey was already urging. If their mother succeeded at the contempt hearing, the children would also profit. The children had no interest which was not being represented in their absence. *See Ratermann*, 341 S.W.2d at 288–89.

■ Because intervention was not mandatory, the trial court's denial of their motion was discretionary and not reviewable on appeal. *Id.* at 286. For these reasons, the children have no protected interest on which to base their constitutional claims. *See, e.g., Horner v. David Distributing Company*, 599 S.W.2d 100, 102 (Mo.App.1980) (explaining that Mo. CONST. art. I, § 14 is "of no aid to plaintiffs unless their petition alleges a claim recognized by law"); *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 230 (Mo. banc 1982) (stating that before due process can be at stake a deprivation of a constitutionally-protected interest must be alleged).

### b. Motion for Continuance

■ The grant or denial of a motion for continuance is largely within the discretion of

the court. We will not set aside a denial of the motion unless the denial was arbitrary and capricious. *Commerce Bank of Mexico, N.A. v. Davidson,* 667 S.W.2d 474, 476 (Mo. App.1984). The children asked for a continuance because one of their two attorneys was unable to appear at the scheduled contempt hearing. The court's denial of a continuance was not an error.

The children did not file a proper motion for continuance. Their motion was not accompanied by an affidavit verifying the facts stated within the motion. *See* Rule 65.03. This failure to follow procedural requirements excused the trial court from addressing the motion. *Davidson,* 667 S.W.2d at 476.

The trial court, however, considered the children's motion for continuance anyway and overruled it. Its ruling was not arbitrary or capricious. The children were ably represented by their other attorney at the contempt hearing. Nothing in the record indicates that the children suffered by having one attorney represent them rather than two. Courts have declined to find that even the complete absence of counsel necessarily compels a continuation. *Id.* at 477. Moreover, because the trial court correctly denied the children's motion to intervene, they were not parties in the contempt hearing and had no standing to ask for a continuance of that hearing.

### c. Motion to Disqualify the Judge

The parties contend several errors concerning the trial judge's refusal to disqualify himself. We address all of them in this section. The children argue that the judge should have transferred the motions to intervene and to disqualify to another trial court. In the alternative, the parties allege that the trial court should have disqualified itself rather than overruling the children's motion. We disagree.

The children contend that the trial court erred in refusing to transfer their motion to intervene and their motion to disqualify the judge. They rely on *State ex rel. Raack v. Kohn,* 720 S.W.2d 941 (Mo. banc 1986), where the court considered the same issue raised by the children: "whether ... the judge ... to be disqualified, may determine whether [the party] who seeks to disqualify [the judge], should be allowed to intervene and gain the status of a 'party in interest' with the adherent right to disqualify [the judge]." 720 S.W.2d at 943. The *Raack* court held that when a party who claims to be a party in interest makes a proper and timely objection seeking to disqualify a judge under § 472.060,[7] the judge should certify the case to another judge for determination, and the judge is without jurisdiction to rule on any motions "which did not precede that filing." *Id.* at 943–44. Holding otherwise would place the intervenor in "a Catch–22:"

> [The intervenor could] only seek to disqualify the judge whom he alleges is prejudiced against him after that allegedly prejudiced judge has ruled in his favor and allowed him to intervene [and] would essentially deprive prospective intervenors of a meaningful right to disqualify and thereby undermine the public confidence and the fundamental fairness which the legislature seeks to promote with the right to disqualify.

*Id.* at 943. Because the relator in *Raack* filed the motions to intervene and to disqualify simultaneously, the *Raack* court ordered that both motions be decided by the transferee judge. *Id.* at 944.

The children's reliance on *Raack* is misplaced. A prerequisite to the court's finding that the judge must transfer the motions was that the motion to disqualify was timely filed.[8] To determine whether a motion to

7. Section 472.060, RSMo 1986, is part of the probate code and says, "No judge of probate shall sit in a case in which he is interested, or in which he is biased or prejudiced against any interested party, ... when any party in interest objects in writing, verified by affidavit; and when the objections are made, the cause shall be transferred to another judge, in accordance with the rules of civil procedure relating to change of judge, who shall hear and determine same[.]"

8. Timeliness of the motion to disqualify was not an issue in Raack. 720 S.W.2d at 943. Had it been an issue, Rule 51.05 would have been the relevant rule.

disqualify is timely filed, we look to Rule 51.05(b) which says:

> The application must be filed within thirty days after the answer is due to be filed if the trial judge is designated at the time the answer is due. If no answer is required to be filed, the application must be filed no later than thirty days after the filing of the civil action. If the trial judge is not designated at the time the answer is due or, if no answer is due, within thirty days after the filing of the civil action, the application must be filed no later than thirty days after the designation of the trial judge and notification to the parties or their attorneys. If the designation of the trial judge occurs less than thirty days before trial, the application must be filed prior to commencement of any proceeding on the record.

Section 508.120, RSMo 1986, also addresses the timeliness of a motion to disqualify a judge. It says:

> [N]o application by a defendant to disqualify a judge shall be granted unless the application therefor is made before the filing of his answer to the merits, except when the cause for the change of venue or disqualification arises, or information or knowledge of the existence thereof first comes to him, after the filing of his answer in which case the application shall state the time when the cause arose or when applicant acquired information and knowledge thereof, and the application must be made within five days thereafter.

We must first determine if the motion for disqualification was timely under Rule 51.05. *Hough v. Hough,* 819 S.W.2d 751, 752 (Mo. App.1991) (holding that Rule 51.05 supersedes § 508.090 during the time period set forth in Rule 51.05). The contempt hearing was to enforce Judge Normile's order upon a motion to modify which was filed on April 15, 1991. The order to show cause regarding the contempt hearing was issued on August 16, 1993. Losey was served with the order on August 23, 1993. The children's motion to intervene was filed on August 27, 1993. The motion to disqualify Judge Normile was filed on August 31, 1993, the date of the contempt hearing. The children's motion to disqualify was timely under Rule 51.05 only if the contempt hearing could be considered a civil action as that term is used in Rule 51.05.

■ This court's Southern District concluded, in *State ex rel. Board of Regents of Southwest Missouri State University v. Bonacker,* 765 S.W.2d 341, 344–45 (Mo.App. banc 1989), that a civil action, as that term is used in Rule 51.05, is an independent suit with new issues, new parties, and new relief which constitutes a final judgment reviewable by an appellate court. A contempt hearing does not qualify as a civil action under this definition. A contempt action is a remedial action, coercive in nature, whose purpose is to enforce a remedy previously ordered in a previous adjudication of the parties' claims. *See Wisdom v. Wisdom,* 689 S.W.2d 82, 86 (Mo.App.1985). A contempt hearing is not a separate suit. It is the court's enforcement of its prior judgment.

■ Because a contempt hearing is not a civil action as that term is used in Rule 51.05, the civil action relevant to the timeliness of the children's motion to disqualify under Rule 51.05 was their father's motion to modify brought April 15, 1991. *See State ex rel. Blackburn v. Elliston,* 796 S.W.2d 637 (Mo. App.1990) (holding that a motion to modify a divorce decree was "filed" for purposes of Rule 51.05 when summons was issued). The children's motion to disqualify was not timely under Rule 51.05.

■ Because the time period in which Rule 51.05 applies had expired when the children filed their motion to disqualify, we must determine whether the extended time limits under § 508.120 are applicable. They are not. Section 508.120 applies only to defendants. Because the children were not defendants in any proceedings before the court, § 508.120 is inapplicable.

The time limits applicable are those of Rule 51.05. Because their motion did not satisfy procedural requirements, the trial court was not required to consider it. *State v. Owens,* 759 S.W.2d 73, 74 (Mo.App.1988).

■ Still, if the trial judge was biased, he should have recused himself notwithstanding the children's failure to satisfy time limits.

*Id.* Rule 2, Canon 3(C) of the Code of Judicial Conduct requires a judge to be recused when "the judge's impartiality might reasonably be questioned[.]" "[U]nder the canon, the test is not whether actual bias and prejudice exist, but whether a reasonable person would have factual grounds to doubt the impartiality of the court.... If, on the record, a reasonable person would find an appearance of impropriety, the canon compels recusal." *State ex rel. Wesolich v. Goeke,* 794 S.W.2d 692, 698 (Mo.App.1990) (citation omitted). We must consider, therefore, whether the judge should have disqualified himself from the proceedings *sua sponte.* We conclude that the trial judge in this case was not required to recuse himself for bias and prejudice.

 The children point to several factors they believe indicate Judge Normile's prejudice against them and their mother. These include: allowing into evidence an advertisement placed by Losey in a local newspaper;[9] ignoring a psychologist's opinion that continued visitation or counseling between the children and their father would be detrimental; ignoring the children's testimony regarding their fear of their father; ignoring evidence indicating that Grissom was not following through with court-ordered drug and alcohol evaluations; and ordering placement of the youngest child in DFS' custody even though he continued visiting his father.

These were all evidentiary issues well within the sound discretion of the trial court. A trial court has great leeway in deciding the relevance of evidence. *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991). The trial court is free to believe or to disbelieve any testimony, including an expert's. *Cohn v. Cohn,* 841 S.W.2d 782, 786 (Mo.App.1992). Rulings against a party will not serve as grounds for recusal. *In re Marriage of Maupin,* 829 S.W.2d 125, 127 (Mo.App.1992). We assume that the trial court placed the children in DFS' custody because it believed that this would best serve the children's interests by putting them in a setting which would require them to continue visiting their father. *Garcia–Otero v. Garcia–Otero,* 770 S.W.2d 486, 487 (Mo.App.1989). The trial court may have feared that Losey would interfere with Nicholas' visitation, just as she interfered with the other three children's visitation.

 The children also point to Judge Normile's comments expressing "great displeasure with comments critical of him which appeared in newspaper articles about this case, which comments were attributed to appellants' mother and the attorneys for the [children]." We are not troubled that a trial judge would express displeasure with public criticism by a party in a case. A trial judge is free to express his personal opinion about a party's conduct to the attorneys involved. Of much more significance is our conclusion that this purported displeasure did not appear to affect the trial judge's decisions.

 Remaining is the attorneys' allegation that Judge Normile should have disqualified himself because of his *ex parte* communications with a DFS worker. The worker testified that she asked Judge Normile in "early July" whether Masters "had a legal right to keep [her] from seeing the children or limiting [her] communication with them." She explained to the judge that she was having problems arranging visitation pursuant to the court order because of Masters' interference. The worker testified that the judge told her that "Mr. Masters would not have the legal right to tell [her she] could not see the children [because] he just would not have legal standing in the case."

The judge's conversation with the DFS worker did not evidence prejudgment of the issue of the children's standing. Masters did not have any basis on which to require DFS to communicate with the children through him. He had not entered an appearance as their attorney, nor had he yet taken any action on their behalf with the court. Judge Normile's comments to the DFS worker ap-

---

9. The advertisement said,
 "Wanted: Men, women, or children who feel they have been treated unfairly in Judge Bruce Normile's court. Send written narrative with pertinent information, include name of opposing attorney. Post Office Box 613, Macon, Missouri 63552."

pear to be his legal opinion based upon the extensive history of the case and his knowledge of the law. That opinion was a correct statement of the status of the case in July, 1993.

The content of the conversation was heard through the testimony of the DFS worker, with opportunity for cross-examination.[10] The trial judge's decision regarding the standing of the children's attorneys appears to be based, not on the judge's personal bias or prejudice, nor on the content of the *ex parte* communication, but on the law and the facts of the case.

Nor do we believe that the conversation gave the appearance of improperly influencing the judge's decision regarding sanctions. Although the trial court erred in that decision, as we discuss below, that error does not indicate prejudice. We find nothing requiring recusal in this case.

## Conflict of Interest

The children argue in their second point on appeal that the trial court erred when it ruled that Masters could not represent the children because he had previously represented their mother. In light of our previous conclusion that the trial court did not err in denying the children's request to intervene, we fail to discern how they were prejudiced by the ruling regarding a conflict of interest. To prevail on appeal, an appellant must demonstrate prejudice from the alleged error. *Owl Drug Company v. Frank E. Whalen Advertising Company,* 156 S.W.2d 777, 781 (Mo.App.1941). However, the trial court used its finding of a conflict of interest to rule that sanctions should be imposed upon the attorneys. We discuss the issue in relation to sanctions below.

## Appointment of a Guardian Ad Litem

■ We reject the children's next allegation that the trial court erred by not appointing a guardian ad litem to represent their interests. They contend that their allegations of abuse by Grissom, their being placed in DFS' custody, and the trial court's threat that they would be removed from their mother's physical custody if she failed to comply with court orders necessitated appointment of a guardian ad litem. The essence of their position was that they did not want the trial court to order in the contempt proceeding that they be removed from their mother's physical custody. The trial court did not remove them from their mother's physical custody. This was the result they wanted. Because they fail to demonstrate prejudice, we reject their point.

## Sanctions

The attorneys contend on appeal that, not only should the trial court have declined to rule on the motion for sanctions, but that the trial court's finding that the attorneys violated Rule 55.03 was in error. We agree.

■ Grissom's attorney filed the motion for sanctions the morning of the contempt hearing. The motion asked for sanctions against Masters and Pitts for violating the requirements of Rule 55.03 by filing pleadings not grounded in fact, not warranted by existing law, and not based on a good faith argument for extension of the law. The gist of the motion was that the attorneys should have known that they could not represent the children and that the children had no capacity to intervene.

Grissom gave no notice that he would file such a motion. All parties knew that Masters would be unable to attend the hearing. The trial court, however, said that it "may on its own initiative, without notice and without motion, make such a ruling [regarding sanctions,]" and denied Pitts' objection to the hearing. This was reversible error.

10. The attorneys complain that they had no opportunity to cross-examine the DFS worker. They also complain that the evidence of the ex parte communication did not become known to them until after the trial court held the hearing on the motion for sanctions. Losey's attorney did have an opportunity to cross-examine the worker. It appears from the record that the trial judge based his judgment regarding sanctions more on his belief that the children's motion was "unnecessary and frivolous" than on a perceived intent to delay and increase costs. Had he based his decision on the conversation with the DFS worker, he would have emphasized the attorneys' intent to delay the proceedings.

A trial court may *sua sponte* impose sanctions for a violation of Rule 55.03, but notice and a hearing are still required. *Noland v. State Farm Mutual Automobile Insurance Company*, 853 S.W.2d 327, 331 (Mo.App. 1993). Due process requires it. *D.S.P. v. R.E.P.*, 800 S.W.2d 766, 771 (Mo.App.1990).

Masters had no notice of the hearing. Pitts received notice only minutes before the hearing and had only fifteen minutes to prepare his arguments. This was inadequate. Rule 44.01(d) requires that, unless otherwise ordered by the court, "[a] written motion ... and notice of the hearing thereof shall be served not later than five days before the time specified for the hearing[.]" The opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

Grissom argued at hearing that because Masters had requested the trial court to hear arguments on the children's pleadings the morning of August 31, 1993, Masters had waived any right to object to any proceedings taking place that morning. Even if this argument stated the facts accurately,[11] it ignores the notice requirement. Nothing either attorney did constituted waiver.

Grissom also argued at hearing that Pitts could adequately represent Masters' interests, so it was not necessary to require Masters' attendance. Pitts told the trial court that he was not purporting to represent Masters. Masters had the right to address the court through his own representative. That Pitts was in the courtroom is not significant.

■■■ Grissom further contended that no harm could come to Masters by hearing the motion for sanctions without him because he "will have an opportunity to request the Court to reconsider" its ruling. Due process is not satisfied by an after-the-fact hearing.

■■■ Even if Masters and Pitts had been given the required notice and opportunity to be heard, the motion should have been denied. Rule 55.03 was not intended to chill attorney's creativity. *Noland*, 853 S.W.2d at 331. Sanctions "should be applied sparingly and with great caution." *Ingram v. Horne*, 785 S.W.2d 735, 737 (Mo.App.1990). The pleadings filed by Masters and Pitts were reasonable under the circumstances. *State ex rel. Accurate Construction Company v. Quillen*, 809 S.W.2d 437, 440 (Mo.App.1991).

■■■ The trial court imposed sanctions under Rule 55.03 based upon its finding that the children could not be represented by Pitts and Masters because of Masters' conflict of interest and because the children could not independently intervene in the proceedings. Because no conflict of interest existed, that could not be the basis for finding a violation of Rule 55.03.

The applicable Missouri Supreme Court rule is Rule 1.9. This rule applies rather than Rule 1.7, which addresses the general rule for conflicts of interests, because Masters had withdrawn from representing Losey well before any action was taken on behalf of the children.[12] Rule 1.9 says, "A lawyer who has formerly represented a client in a matter shall not thereafter ... represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation[.]"

The trial court found the children's interests to be materially adverse to those of their mother based upon its finding that the mother interfered with the children's right to visitation with their father. This could serve

---

11. The trial court set the contempt hearing for August 31, 1993. The children filed a motion to shorten time to notify parties of a hearing on their motion to intervene and asked that their motion to intervene be heard on August 31, 1993. At the same time, however, the children explained that Masters was unable to be at the hearing on August 31, 1993, and requested a continuance of all matters.

12. The trial court said that "Masters ... represented the mother, Mrs. Losey, on Motions for Contempt about interference with visitation with the children filed in April of 1992 and on until these motions were filed[.]" The docket sheet for this case contains a handwritten entry on August 4, 1992, indicating that the judge sustained Masters' motion to withdraw on that date. The first pleadings involving the children were not filed until almost one year later.

as a valid basis for finding a conflict of interest had the children wished to assert their right to visitation with their father. They did not. Rather, the contempt action against Losey arose because the children refused to visit their father. Masters' strategy appeared to be to argue that Losey never interfered with the children's visitation with their father, so she should not have been found in contempt, and, as a result, the children never should have been made wards of the court. Nothing in this plan is inapposite to Losey's defense.

> The mere existence of a possible conflict of interest does not preclude effective representation. The critical questions are whether it is likely that a conflict will arise and if so, will it materially interfere with the independent professional judgment of the lawyer in considering alternatives or courses of action that should reasonably be pursued on behalf of the client.

*Johns v. State of Missouri,* 741 S.W.2d 771, 777 (Mo.App.1987). The facts of this case do not support a finding that the children's interests were materially adverse to those of their mother.

 Even if it were granted that the children's interests were materially adverse to those of their mother, we must reverse the trial court's finding because Losey consented to Masters' representing the children. Rule 1.9 allows an attorney to represent a client whose interests are materially adverse to those of a former client if the former client consents. The trial court found Losey's consent to be of no consequence because it believed that the children must also consent to the representation, and, because they were minors, they were unable to consent. This is ·

a misstatement of the requirements of Rule 1.9.[13] Losey's consent to Masters' representation of the children rendered invalid any claim of a conflict of interest by Masters' representation of the children.[14] It was error to sanction the attorneys based upon a conflict of interest.

Additionally, Missouri courts have never addressed the issue of whether an attorney can represent children seeking to intervene in a contempt hearing alleging interference with a visitation order.[15] The attorneys' attempt to do so was not frivolous, but a good faith attempt to extend Missouri law. We find no evidence of improper motives. *Saganis–Noonan v. Koenig,* 857 S.W.2d 499, 502 (Mo.App.1993) (motions for sanctions are usually granted only for bad faith). We reverse the order of sanctions against Masters and Pitts.

### Conclusion

We affirm the trial court's denial of the motion to intervene, the motion for a continuance, and the motion to disqualify. The children failed to establish prejudice in the trial court's refusal to appoint a guardian ad litem and its determination that Masters had a conflict of interest, so we affirm. We reverse the trial court's order of sanctions against Pitts and Masters.

All concur.

13. The trial court's mistaken belief that Masters had not withdrawn from representing Losey prior to filing motions on behalf of the children may have led to its misapplying the law on this point. If Masters had been representing the children while also representing Losey, then Rule 1.7 would be applicable rather than Rule 1.9. Rule 1.7 arguably requires the consent of both parties to avoid a conflict of interest arising by the simultaneous representation. See Rule 1.7(b)(2). Rule 1.9, on the other hand, requires the consent of only the former client to waive the conflict.

14. The finding that Masters did not have a conflict of interest leads to the additional conclusion

that the trial court's basis for finding that Pitts did not have standing was also in error. The trial court, however, allowed Pitts to argue on the sanctions motion. Pitts also argued extensively on the children's motions and for the appointment of a guardian ad litem, although the trial court correctly ruled against those arguments.

15. That this court and the Missouri Supreme Court denied the children's writs of prohibition previously is of no relevance. *Lipton Realty, Inc. v. St. Louis Housing Authority,* 705 S.W.2d 565, 570 (Mo.App.1986).