ply because the parties are interested in the same question or in proving or disproving the same state of facts." *Clements v. Pittman*, 765 S.W.2d 589, 591 (Mo. banc 1989).

**In the Interest of D.C. and A.C., Minor Children.**

**Nos. ED 78591, ED 78593.**

Missouri Court of Appeals, Eastern District, Division Two.

May 22, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 19, 2001.

Richard B. Dempsey, Washington, Leneigha Downs, Union, for appellant.

Richard J. Childress, St. Louis, Julie Forman–Jones, Union, for respondent.

CRANDALL, J.

Mother, Tracey Carroll, appeals from the judgment of the trial court terminating her parental rights to two children, A.C. and D.C. Paternal grandmother of D.C., Patti Nixon, appeals from the judgment only as it relates to D.C. The appeals were consolidated for our review. We affirm.

## FACTS

The juvenile officer filed a petition for the termination of the parental rights of mother and A.C.'s father, Eric Gildehaus, to A.C.; and of the parental rights of mother and D.C.'s father, Randall Nixon, to D.C. The trial court consolidated that petition with the permanency planning hearing and also consolidated the actions with regard to both A.C. and D.C. The court permitted several parties to intervene: Patti Nixon, the paternal grandmother of D.C.; Terry and Linda Gildehaus, the foster parents of both children and the paternal grandparents of A.C.; and Barbara and Dallas Mackenzie, the

biological mother and stepfather of mother, mother having been legally adopted by her maternal grandparents.

At the hearing, the evidence established that D.C. was born in July 1997 and the Division of Family Services (hereinafter DFS) took him into custody in June 1998. A.C. was born in October 1998 and the DFS took her into custody in December 1998. At the time of the hearing, both children were in foster care, residing with the Gildehauses, who expressed their desire to continue with custody of A.C. only.

The DFS case worker testified at the hearing. Her testimony established that mother signed two separate service agreements, one in February 1998 and one in May 1999. Yet, mother was not successful in completing the terms of either agreement. Mother's lifestyle was described as "chaotic" and "unstable." She did not keep regular hours and did not maintain a clean home. She did not complete the budgeting, financing, vocational rehabilitation, individual counseling, and parenting education programs offered to her. Despite mother's having been diagnosed previously as suffering from borderline personality disorder and paranoid schizophrenia, she refused to take medication and did not seek treatment. During her supervised visits with the children, she did not always play with them and found it difficult to keep her attention focused on them for an extended period of time.

The trial court terminated mother's parental rights to both children. With regard to both children, the court found in part:

> The mother refuses to fully participate in counseling, undergo a psychiatric evaluation, or be evaluated as to her need for medication, despite this Court's previous finding that she suffers from borderline personality disorder and despite her own testimony that she has been previously diagnosed with borderline personality and paranoid schizophrenia. The mother, after working with a parent aide for over one year, only very recently completed parenting classes. However, ....the visitation supervisor and parent aide, has seen no consistent improvement in the mother's parenting abilities. Despite the fact that mother's former attorney ... was, successful in obtaining various services from Rolla Regional, ... [the] Case Manager, has been unsuccessful in implementing those services due to the mother's continued instability. The mother continues to allege that the granting of additional time will enable her to complete the various tasks required by the Missouri [DFS]. She has previously asked for and has been granted additional time. She still has not favorably responded by completing the various requests. In light of her behavior, no additional time would be used by her to complete the requests....

The court terminated Randall Nixon's parental rights to D.C. and also terminated Eric Gildehaus's parental rights to A.C. As to D.C., the trial court made a specific finding that placement with either Patti Nixon or the Mackenzies would not be in the child's best interest.

## STANDARD OF REVIEW

■ On an appeal of a termination of parental rights order, the appellate court views the facts and all reasonable inferences arising therefrom in the light most favorable to the trial court's order. *In re J.W.,* 11 S.W.3d 699, 703 (Mo.App. W.D. 1999). We will affirm the trial court's order unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536

S.W.2d 30, 32 (Mo. banc 1976). A parent's rights may be terminated if the court finds that "the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence" that grounds for termination exist. Section 211.447, RSMo (2000). Clear, cogent, and convincing evidence is that evidence which tilts the scales in the affirmative and leaves the fact finder's mind with an abiding conviction that the evidence is true. *In re J.W.*, 11 S.W.3d at 703. This test may be met despite the presence of contrary evidence before the court. *Id.*

## MOTHER'S APPEAL

■ In her first point, mother contends the trial judge committed reversible error in failing to recuse himself. She argues that his comments evinced bias toward her and her attorney. Mother did not, however, request a change of judge.

Rule 126.01 requires a change of judge (1) "[w]hen the judge of the juvenile court is interested, related to a party, or otherwise disqualified under Rule 51.07;" or (2) "[u]pon application of a party." Here, the judge was neither an interested party nor related to a party. In addition, mother did not apply for a change of judge. Having failed to do so, she cannot now complain.

■ As to mother's argument that the judge should have recused himself *sua sponte*, Rule 2, Canon 3(C) of the Code of Judicial Conduct requires a judge to be recused when "the judge's impartiality might reasonably be questioned." The test is not whether actual bias and prejudice exist, but whether a reasonable person would have factual grounds to doubt the impartiality of the court. *Grissom v. Grissom*, 886 S.W.2d 47, 56 (Mo.App. W.D. 1994). If, on the record, a reasonable person would find an appearance of impropriety, the canon compels recusal. *Id.*

■ Mother points to several comments by the judge that she perceived as admonishing her for her failure to file an answer; as "threatening" to her attorney to coerce her attorney to agree to consolidate the termination and pernanency planning proceedings; and as indicative of the court's predisposition on the issue of terminating her parental rights. Yet, a judge's mere possession of views regarding the conduct of a party or of the party's counsel does not constitute disqualifying prejudice. *Williams v. Reed*, 6 S.W.3d 916, 922–923 (Mo.App. W.D.1999). A trial judge is free to express his personal opinion about a party's conduct to the attorneys involved. *Grissom*, 886 S.W.2d at 56. And, rulings against a party will not serve as grounds for recusal. *Id.* We have reviewed the record and find that based on the court's comments and conduct, a reasonable person would not have a basis to find an appearance of impropriety and to thereby doubt the impartiality of the court. Mother's first point is denied.

■ In her second point, mother charges error in the trial court's permitting the intervention of five additional parties into the termination proceeding to argue their fitness as custodians for the children. She contends this action tainted the proceeding with "impermissibly prejudicial issues." Mother, however, acquiesced to the intervention of the parties; and her counsel stated that "everyone should get their chance [to speak]." Mother's second point is denied.

In her third point, mother asserts the trial court erred in denying her motion for a continuance. She argues the court should have granted her additional time to prepare in light of the fact that it allowed the intervention of five additional parties.

■ The denial of a request for a continuance rarely is reversible error; yet

the trial court enjoys neither an absolute nor an arbitrary discretion, and the trial court's action will be reversed if there has been an abuse of discretion. *In Interest of S——G.*, 779 S.W.2d 45, 51 (Mo.App.1989). Here, all the parties were present and ready to proceed. The court viewed the matter as of some urgency, stating, "We have two little children that we have to take care of." The trial court did not abuse its discretion in refusing to grant a continuance. Mother's third point is denied.

There remain several points in mother's appeal. In her fourth point, mother avers the trial court's findings with regard to the permanency plan for the children were contrary to the law, because the court failed to address the statutory factors under section 210.720, RSMo (2000). She also claims that the trial court's findings were not supported by substantial evidence and/or were against the weight of the evidence with regard to the permanency plan (point 4), with regard to her mental condition (point 5), with regard to her ability to provide for the children (point 6), with regard to her failure to comply with the terms of her social service plans (point 7), with regard to the termination of her parental rights based on the factors under sections 211.447.4(3)(a) and (b) (point 8), and with regard to the termination of her parental rights based on factors under section 211.447.6 (points 9 and 10). We have reviewed these points on appeal and find that the findings by the trial court are supported by substantial evidence and are not against the weight of the evidence. No error of law appears. An opinion on these points would have no precedential value. The points are denied pursuant to Rule 84.16(b).

### D.C.'S GRANDMOTHER'S APPEAL

In her first point, grandmother, Patti Nixon, contends that the trial court erred in proceeding with the hearing on permanent placement and termination of parental rights with regard to her grandson, D.C.

She first argues that she was not provided with service and notice of the proceeding. When a petition is filed in juvenile court, service of summons must be made personally upon the parents and actual *custodian* of the juvenile and also upon other *parties* personally or by registered or certified mail. Rule 115.01.c. Although the trial court granted her oral motion to intervene, D.C.'s grandmother was neither the custodian of D.C. nor a party to the action at the time the petition was filed and thus did not fall into any of those categories of persons entitled to service under the rule.

She next contends that the court erred in failing to grant a continuance because she needed more time to obtain counsel. Yet, grandmother never requested a continuance and never objected to the proceedings. In addition, when the trial court specifically questioned her about her position on a pending motion to continue, she responded, "I do not want to be the sole reason of continuance. . . . The best interest of the children have to be served." She cannot now complain about the trial court's refusal to grant a continuance. Grandmother's first point is denied.

In her second point, grandmother challenges the trial court's finding that it would not be in D.C.'s best interests to be placed with her. Although she was denied foster care consideration, she argues the record was devoid of any evidence as to her worthiness for foster care placement of D.C. Moreover, she states, "[A]ssuming that the court might consider adoption of [D.C.] by [grandmother], the court's own factual finding that it is not in the best

interests of [D.C.] that he live with his grandmother is res [judicata] as concerns any future consideration of where the child should live."

We disagree with grandmother's assertion that the trial court's finding is res judicata on the issue of D.C.'s placement with her. Because the issue of the adoption of D.C. was not before the court, any extraneous finding by the court with regard to the fitness of grandmother to have custody or to adopt D.C. is gratuitous and has no bearing on any future determination of what permanent placement would be in D.C.'s best interests. Grandmother's second point is denied.

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, P. J., and JAMES R. DOWD, J., concur.