

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| IN THE INTEREST OF: A.R.B.; | ) | |
| | ) | |
| JUVENILE OFFICER, | ) | WD82162 |
| | ) | |
| Respondent, | ) | OPINION FILED: |
| | ) | September 3, 2019 |
| E.R. and M.R., | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| T.B., | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable J. Dale Youngs, Judge

Before Division One:  Cynthia L. Martin, Presiding Judge, Victor C. Howard, Judge and
Alok Ahuja, Judge

T.B. ("Mother") appeals from the trial court's judgment terminating her parental

rights to A.R.B. ("Child").   Mother argues on appeal that the trial court's judgment

constituted error in seven respects: (1) the commissioner who presided over the termination

of parental rights trial and made findings and recommendations to the trial court was

obligated to recuse himself pursuant to Rule 121.01;[1] (2) Mother was never served with a summons for the petition filed on July 16, 2015; (3) Mother was not properly served with the first amended petition filed on August 19, 2016, because the officer making the return did not comply with Rule 54.20(b)(1); (4) in the underlying juvenile proceedings, Mother was not given notice of her right to counsel, Mother was not provided an application for appointment of an attorney, and Mother went unrepresented for over two and a half years; (5) Mother was not given notice of her right to counsel and was not appointed counsel for nearly six months after the petition to terminate parental rights was filed, and once Mother was appointed counsel, she was denied effective assistance of counsel; (6) the trial court improperly considered Mother's "mental condition" as a basis for terminating parental rights; and (7) the guardian ad litem failed to discharge her duties to act diligently in the best interests of the child and to undertake a diligent independent investigation. We affirm the trial court's judgment, but remand this matter to the trial court for consideration of Mother's pending motion for attorney's fees in excess of the regulatory maximum.

## Factual and Procedural History[2]

Mother is the biological mother of the Child, born on April 29, 2011. On June 27, 2013, the Juvenile Officer of Jackson County filed a petition ("abuse and neglect petition") in case number 1316-JU000703 ("underlying juvenile matter") alleging that the Child was without the proper care, custody, or support necessary for his well-being because Mother exhibited a pattern of neglect toward the Child. In particular, the abuse and neglect petition

---

[1]All rule references are to the Missouri Supreme Court Rules (2017), unless otherwise noted.

[2]On appeal from a judgment terminating parental rights, we view the facts in the light most favorable to the judgment. *In Interest of K.S.*, 561 S.W.3d 399, 401 n.1 (Mo. App. W.D. 2018).

alleged that, in or around January 2013, Mother left the Child in the care of a friend without providing the friend authority to seek medical treatment for the Child despite knowing that the Child required special medical treatment due to a heart condition. The abuse and neglect petition further alleged that Mother had not provided any emotional or financial support for the Child since January 2013 and had failed to have any contact with the Child since April 2013. The abuse and neglect petition noted Mother's criminal record and the fact that Mother had two other children, one of whom was in the custody of E.R. as a result of a paternity action, and one of whom was in the custody of E.R. as a result of a guardianship action.[3] At the time the abuse and neglect petition in the underlying juvenile matter was filed, William R. Jackson was the Juvenile Officer of Jackson County ("Juvenile Officer"). An attorney for the Juvenile Officer signed the petition.

The same day the abuse and neglect petition was filed, the trial court entered an order for temporary protective custody, placing the Child in the temporary protective custody and in the temporary legal custody of the Children's Division. The trial court held a protective custody hearing on July 2, 2013. Following the hearing, the trial court ordered that the Child remain in protective custody and in the temporary legal custody of the Children's Division, and ordered that the Children's Division investigate E.R. as a possible kinship placement for the Child. The trial court further ordered that E.R. have visitation with the Child.

---

[3]E.R. is the biological father of one of Mother's other two children and the guardian of the other.

Mother was served with a summons for the abuse and neglect petition on July 11, 2013, while she was incarcerated in the Henry County jail. The first hearing on the abuse and neglect petition in the underlying juvenile matter was held on July 24, 2013. Mother did not appear. The trial court set an adjudication hearing in the underlying juvenile matter for August 20, 2013, and reiterated its order that E.R. have visitation with the Child.

The adjudication hearing was held as scheduled on August 20, 2013. Mother did not appear, as she was still incarcerated in the Henry County jail. Commissioner Geoffrey E. Allen ("Commissioner Allen") presided over the adjudication hearing, during which evidence was received. Commissioner Allen entered findings and recommendations sustaining the allegations in the abuse and neglect petition and finding that the Child was in need of care and treatment. The findings and recommendations ordered the Child to be committed to the custody of the Children's Division for placement. The findings and recommendations further ordered Mother to submit to a psychological evaluation; that Mother complete a substance abuse assessment; that the Children Division place the Child with E.R. if justified by a home study; that Mother have closely supervised visits with the Child if the guardian ad litem agrees; that E.R. have supervised and unsupervised visits with the Child; and that the Children's Division provide a parent aid. The trial court adopted the findings and recommendations on August 22, 2013.

Following a case review hearing in December 2013, Commissioner Allen ordered that the Children's Division place the Child in the home of E.R. and M.R. (collectively "Prospective Adoptive Parents") in Sturgeon, Missouri. The trial court adopted these

4

findings and recommendations on December 20, 2013. The Child has remained in the Prospective Adoptive Parents' home since that time.

On April 7, 2014, another case review hearing took place. Commissioner Allen entered findings and recommendations that ordered the Child to remain in the custody of the Children's Division and in the placement of the home of the Prospective Adoptive Parents, and that ordered adoption planning to commence. The April 7, 2014 findings and recommendations scheduled a permanency hearing for July 29, 2014. The trial court adopted these findings and recommendations on April 10, 2014.

The permanency hearing was held on July 29, 2014, and was presided over by Commissioner Allen. The findings and recommendations continued the court's previous orders and stated that the goal for the Child should be adoption. The trial court adopted these findings and recommendations on August 1, 2014.

Additional case review hearings were held in November 2014, April 2015, and June 2015, and in each of these instances, the trial court adopted Commissioner Allen's findings and recommendations to continue all previous orders, including the order that adoption remained the goal. The June 2015 case review hearing was the final hearing over which Commissioner Allen presided in the underlying juvenile matter.

On July 16, 2015, the Prospective Adoptive Parents filed a petition to adopt the Child ("adoption petition") in case number 1516-FC06455 ("termination of parental rights action"). The adoption petition alleged that Mother was the Child's natural mother and that the Child's natural father was unknown. The adoption petition further alleged that Mother "willfully abandoned, and willfully, substantially, and continuously neglected to provide

5

the [C]hild with the necessary care and protection for a period of at least six months immediately prior to the filing of the Petition for Adoption" so that "her consent to adoption is not required." The adoption petition made the same allegations about the Child's unknown natural father. The Prospective Adoptive Parents served the Child's unknown natural father by publication but otherwise took no other action in the termination of parental rights action.

While the termination of parental rights action was initially assigned to Commissioner Allen, Commissioner William R. Jackson ("Commissioner Jackson"), former Juvenile Officer of Jackson County, was appointed to the case on September 1, 2015. Commissioner Jackson also replaced Commissioner Allen in the underlying juvenile matter. On October 27, 2015, at a case review hearing for the underlying juvenile matter, Commissioner Jackson asked the parties present (the attorney for the Juvenile Officer and the guardian ad litem) whether either party wanted Commissioner Jackson to recuse himself based on his prior role as the Juvenile Officer of Jackson County. Neither the attorney for the Juvenile Officer nor the guardian ad litem requested recusal. Mother was not present at the hearing.

On November 5, 2015, a Children's Division caseworker met with Mother while Mother was incarcerated in the Chillicothe Correctional Center to discuss adoption of the Child. The caseworker testified that the purpose of her visit was to introduce herself, to advise Mother about steps she could be taking if she wished to retain parental rights, and to complete the necessary paperwork if Mother wanted to consent to the termination of her

6

parental rights. Mother conveyed to the caseworker that she wanted to request an attorney, and on December 29, 2015, the caseworker forwarded those documents to Mother.

On January 6, 2016, Mother submitted her request for an attorney to the trial court in the underlying juvenile matter. The trial court appointed counsel to represent Mother in both the underlying juvenile matter and in the termination of parental rights action on January 8, 2016. In February 2016, Mother's appointed counsel for the termination of parental rights action ("appointed counsel") filed a motion for leave of court to file an answer to the adoption petition out of time. The trial court granted the motion, but appointed counsel never filed an answer to the adoption petition.

On August 19, 2016, the Prospective Adoptive Parents filed their first amended petition for termination of parental rights and adoption ("first amended petition"). The first amended petition alleged that terminating Mother's parental rights to the Child was appropriate because (1) pursuant to section 211.447.5(1)(b),[4] Mother had abandoned the Child for a period of at least six months; (2) pursuant to section 211.447.5(2)(d), the Child had been abused or neglected in that Mother has repeatedly or continuously failed, although physically or financially able, to provide the Child with adequate food, clothing, shelter, or education as previously determined in the underlying juvenile matter; (3) pursuant to section 211.447.5(3), the Child had been under the jurisdiction of the juvenile court for a period of one year and the conditions that led to the assumption of jurisdiction still persist,

---

[4]None of the statutes referenced in this Opinion were amended between the filing of the adoption petition, the filing of the first amended adoption petition, and the second amended petition. As such, all statutory references are to RSMo 2000 as supplemented through July 16, 2015, the date the adoption petition was filed, unless otherwise indicated.

7

and there is little likelihood that those conditions will be remedied so that the Child can be returned to the care of Mother in the near future; and (4) pursuant to section 211.447.6, Mother is unfit to be a party to the parent-child relationship. The first amended petition also requested that the trial court enter a judgment approving the adoption of the Child by the Prospective Adoptive Parents. Mother was personally served with a summons and the first amended petition on September 13, 2016, in DeWitt, Arkansas, where she resided after being released from incarceration in August 2016.

On September 16, 2016, Commissioner Jackson presided over a case management conference in the termination of parental rights action during which Mother's appointed counsel, an attorney for the Prospective Adoptive Parents, an attorney for the Juvenile Officer, and the Child's guardian ad litem were present. Following the case management conference, Commissioner Jackson ordered that the Juvenile Officer be joined as a party pursuant to section 211.447, and ordered that the Children's Division conduct a termination of parental rights study.

Appointed counsel filed an answer to the first amended petition on Mother's behalf on October 13, 2016. The answer to the first amended petition denied the allegations that a basis for terminating parental rights existed, and asserted the following affirmative defenses: (1) that the Prospective Adoptive Parents failed to state a cause of action upon which relief could be granted; (2) that should the trial court find that Mother abandoned the Child, she successfully repented any period of abandonment or neglect; and (3) that termination of Mother's parental rights is not in the best interests of the Child. The answer

8

to the first amended petition then "reserve[d] the right to assert additional affirmative defenses that may become known during this litigation."

Appointed counsel continued her representation of Mother, including responding to discovery requests, propounding discovery upon the Prospective Adoptive Parents, and filing a motion to quash the pending deposition of Mother, through March 27, 2017. On March 27, 2017, appointed counsel withdrew as counsel for Mother, and two attorneys ("trial counsel") entered their appearance on behalf of Mother in both the termination of parental rights action and in the underlying juvenile matter. Trial counsel continued to represent Mother through trial in the termination of parental rights action.

On May 24, 2017, the Prospective Adoptive Parents filed their second amended petition for termination of parental rights and adoption ("second amended petition"), which added G.W., the Child's alleged natural father, as a defendant, and which alleged that terminating his parental rights to the Child was appropriate. The second amended petition included the same bases for termination of Mother's parental rights as the first amended petition and asked that the trial court enter an adoption decree approving the adoption of the Child by the Prospective Adoptive Parents.

Trial counsel filed an answer to the second amended petition on Mother's behalf on June 26, 2017. The answer to the second amended petition denied that there was a basis to terminate Mother's parental rights and asserted seven affirmative defenses: (1) that the Prospective Adoptive Parents failed to state a cause of action upon which relief could be granted; (2) that, if the trial court should find that Mother abandoned the Child, she successfully repented any period of abandonment or neglect; (3) that termination of

9

Mother's parental rights and adoption of the Child by the Prospective Adoptive Parents is not in the Child's best interests; (4) that Mother was never served with the adoption petition so that notice was never given to Mother, which constituted a violation of her constitutional right to due process; (5) that the termination of parental rights action should be dismissed for failure to issue a summons as required by Rule 54.21; (6) that the termination of parental rights action should be dismissed for failure to obtain service on Mother under Rule 54.21 so that the trial court lacks personal jurisdiction over Mother; and (7) that the Children's Division failed to comply with legal requirements regarding the suitability of the proposed adoption.

On October 8, 2017, shortly before trial was set to begin, Mother filed a motion to dismiss the termination of parental rights action ("motion to dismiss"). The motion to dismiss argued that dismissal was appropriate for lack of prosecution because the Prospective Adoptive Parents never completed or attempted service of the adoption petition on Mother for over a year after it was filed. The motion to dismiss also claimed that the Prospective Adoptive Parents failed to obtain proper service of the first amended petition on Mother because the requirements for out-of-state service were not met. Finally, the motion to dismiss argued that a violation of due process occurred because the notice did not give Mother an adequate opportunity to defend herself and because she received ineffective assistance of counsel from appointed counsel.

On October 12, 2017, Commissioner Jackson issued an order denying all of Mother's pending motions. The order also indicated that the trial in the termination of parental rights action would be bifurcated so that the trial court "[would] not entertain

10

issues regarding the appropriateness of the adoptive placement until all issues regarding termination of parental rights and need for consent in the adoption have been determined." The order also indicated that a review of the case file revealed that one of Mother's trial counsel had previously represented the Juvenile Officer in the case but that no written waivers of conflicts had been filed. The order directed the parties to inform the trial court in writing of their understanding of the apparent conflict. The Juvenile Officer filed a waiver of the conflict of interest on October 17, 2017.

Commissioner Jackson then presided over a fourteen-day trial that took place over the course of nine months, spanning from October 19, 2017, to June 29, 2018. Witnesses included the Prospective Adoptive Parents, the Child's therapist, the Children's Division caseworker, the clinical psychologist who conducted a psychological evaluation of Mother, Mother's therapist, Mother and the Child's family therapist, the guardian ad litem, a Children's Division alternative care worker, a Children's Division service worker, and a police officer who investigated an allegation of child abuse against E.R. Mother did not testify.

On August 24, 2018, Commissioner Jackson filed his findings of fact, conclusions of law, and recommendation of termination of parental rights of Mother ("proposed judgment").[5] The proposed judgment concluded that Mother had willfully abandoned and had willfully, substantially, and continuously neglected to provide the Child with necessary care and protection for a period of at least six months prior to the filing of the adoption

---

[5]Commissioner Jackson's findings of fact, conclusions of law, and recommendations also included his recommendation to terminate the parental rights of G.W., the child's putative father, and John Doe. Those findings, conclusions, and recommendations are not at issue in this appeal.

11

petition so that, pursuant to section 453.040(7), her consent to adoption was not required. The proposed judgment also concluded that the following bases existed to support terminating Mother's parental rights: (1) Mother abandoned the Child pursuant to section 211.447.5(1); (2) the Child had been abused or neglected by Mother pursuant to section 211.447.5(2); (3) the Child had been under the jurisdiction of the juvenile court for more than a year, the conditions that led the assumption of jurisdiction still persist, and conditions of a potentially harmful nature continue to exist pursuant to section 211.447.5(3); and (4) Mother was unfit to be a party to the parent-child relationship pursuant to section 211.447.5(6). The proposed judgment further concluded that termination of Mother's parental rights was in the Child's best interests. The proposed judgment ordered that the Child's custody would remain as ordered in the underlying juvenile matter. The trial court adopted Commissioner Jackson's proposed judgment on August 24, 2018.

Commissioner Jackson later issued *nunc pro tunc* findings of fact, conclusions of law, and recommendation of termination parental rights of Mother ("*nunc pro tunc* proposed judgment") in order to correct the findings to include a court date previously omitted. The trial court adopted the *nunc pro tunc* proposed judgment as its judgment ("Judgment") on October 11, 2018.

Mother appeals.[6] Additional facts are discussed in the analysis portion of this Opinion as necessary.

_____

[6]Mother's appeal is timely. Though the Judgment adopting the *nunc pro tunc* proposed judgment related back to the date of the trial court's adoption of the initial proposed judgment (August 24, 2018), there was an after-

12

**Standard of Review**

"'Termination of parental rights is an exercise of awesome power, and therefore we review such cases closely.'" *In Interest of G.M.G.*, 525 S.W.3d 162, 164-65 (Mo. App. W.D. 2017) (quoting *In re C.F. & A.K.*, 340 S.W.3d 296, 298 (Mo. App. E.D. 2011)). Our review of a judgment terminating parental rights is in accordance with the standard for court-tried cases set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Id.* at 164. "'The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Id.* (quoting *In Interest of G.E.R. v. B.R.*, 441 S.W.3d 190, 195 (Mo. App. W.D. 2014)).

However, if a point on appeal has not been preserved, "[w]e will 'review [it] for plain error only if there are substantial grounds for believing that the trial court committed error that is evident, obvious and clear and where the error resulted in manifest injustice or miscarriage of justice.'" *In Interest of S.E.*, 527 S.W.3d 894, 901 (Mo. App. E.D. 2017) (quoting *Mayes v. Saint Luke's Hosp.*, 430 S.W.3d 260, 269 (Mo. banc 2014)).

**Analysis**

Mother sets forth seven points on appeal, none of which challenge the sufficiency of the evidence to support the Judgment's conclusions that several bases exist for terminating Mother's parental rights and that terminating Mother's parental rights is in the best interests of the Child. Instead, Mother asserts that she was denied due process during

trial motion pending at the time the *nunc pro tunc* proposed judgment and Judgment were issued. Mother's appeal was thus timely as her notice of appeal was filed within ten days after her after-trial motion was deemed denied.

the termination of parental rights action, argues that the trial court considered a ground for termination of Mother's parental rights that was not pleaded, and claims that the guardian ad litem failed to discharge her duties to act diligently in the best interests of the Child. We discuss Mother's points separately.

*Point One: Commissioner Jackson's Obligation to Recuse*

Mother's first point on appeal challenges the neutrality of Commissioner Jackson. Mother argues that the trial court erred in terminating her parental rights because Commissioner Jackson presided over the trial and made findings and recommendations to the trial court despite serving as the Juvenile Officer at the time the underlying juvenile matter was initiated. Mother claims that Rule 121.01 obligated Commissioner Jackson to disclose to Mother that he was the former Juvenile Officer and to recuse himself. Mother asserts that the failure to do so resulted in a denial of her right to due process in that she was not given a fundamentally fair and meaningful hearing before a neutral arbiter. Mother acknowledges that she did not preserve this issue for appeal and asks us to review Commissioner Jackson's failure to recuse himself for plain error.

"Family court commissioners are obligated to conduct themselves as judicial officers" and are obligated to follow the standards for judicial conduct. *In Interest of K.L.W.*, 131 S.W.3d 400, 404 (Mo. App. W.D. 2004). Rule 121.01, which applies to juvenile proceedings, provides that "[a] judicial officer shall recuse when the judicial officer is interested, related to a party, has been counsel for a party in any proceeding, or is recused for any other reason." Mother's position on appeal is that Commissioner Jackson's service as the Juvenile Officer rendered him an interested party such that Rule

14

121.01 required Commissioner Jackson to recuse himself in the termination of parental rights action. Mother claims that it was plain error for Commissioner Jackson to fail to recuse himself.

Mother is correct that a judicial officer is required to recuse himself "when impropriety or the appearance of impropriety appears" and that "[w]hen cause to recuse appears, a judge must do so." *Ham v. Wenneker*, 609 S.W.2d 240, 241 (Mo. App. W.D. 1980). The standard for recusal requires a judicial officer to recuse when "a reasonable person would have factual grounds to doubt the impartiality of the court." *In re D.C.*, 49 S.W.3d 694, 698 (Mo. App. E.D. 2001). "If, on the record, a reasonable person would find an appearance of impropriety, [Rule 2, Canon 3(C) of the Code of Judicial Conduct] compels recusal." *Id.* Further, Rule 2-2.11(A)(5) of the Code of Judicial Conduct provides that "[a] judge shall recuse himself . . . in any proceeding in which the judge's impartiality might be reasonably questioned, including" a case in which "[t]he judge . . . served as a lawyer in the matter in controversy" or a case in which "[t]he judge . . . served in government employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding."

Here, the record indicates that, at the time the abuse and neglect petition in the underlying juvenile matter was filed, William R. Jackson was the Juvenile Officer. His name and title appeared above the signature line on the abuse and neglect petition. Immediately below his name and title, an attorney for the Juvenile Officer signed the abuse and neglect petition. Other than the identification of William R. Jackson as the Juvenile Officer, nothing in the record indicates that he was in any way personally interested in, or

15

even aware of, the underlying juvenile matter. At no time in the underlying juvenile matter did William R. Jackson personally appear before the trial court or personally submit any filings. Instead, the record establishes that William R. Jackson was merely the named office holder. As such, we cannot conclude that Commissioner Jackson was compelled to recuse himself. The record does not establish that he was "interested, related to a party, [or had] been counsel for a party in any proceeding" so as to compel recusal under Rule 121.01. Further, the record does not establish that Commissioner Jackson, as Juvenile Officer, personally served as counsel for the Juvenile Officer in the underlying juvenile matter so as to require recusal under the Code of Judicial Conduct.

Despite being simply the named office holder for the entity that filed the abuse and neglect petition against Mother, Commissioner Jackson began the first case review hearing after he was appointed to the underlying juvenile matter by asking the parties present (the attorney for the Juvenile Officer and the guardian ad litem) whether either party wanted Commissioner Jackson to recuse himself based on his prior role as the Juvenile Officer. Both parties responded, "No, Your Honor." The issue of Commissioner Jackson's prior service as the Juvenile Officer was never raised again, by either the parties or Commissioner Jackson, during the pendency of the termination of parental rights action.

Mother claims that Commissioner Jackson had an obligation to disclose to Mother that he had served as the Juvenile Officer when the abuse and neglect petition was filed and to obtain her informed consent to adjudicate the termination of parental rights action. Mother does not support her claim with citation to authority so that it is not preserved for review. *Wallace v. Frazier*, 546 S.W.3d 624, 628 (Mo. App. W.D. 2018) ("'Mere

16

conclusions and the failure to develop an argument with support from legal authority preserve nothing for review.'" (quoting *Nicol v. Nicol*, 491 S.W.3d 266, 271 (Mo. App. W.D. 2016))). Further, given that one of Mother's trial counsel previously worked as an attorney for the Juvenile Officer at the time Commissioner Jackson was the named office holder, it is unreasonable for Mother to argue that she was not aware of the purported conflict and was thus denied a fundamentally fair and meaningful hearing before a neutral arbiter.

Because neither Rule 121.01 nor the Code of Judicial Conduct required Commissioner Jackson's recusal, we cannot conclude that Commissioner Jackson's failure to recuse himself was plain error.

Point One is denied.

***Points Two and Three: Failure to Issue Summons for the Adoption Petition and Improper Service of the First Amended Petition***

Mother's second and third points on appeal challenge whether the trial court had personal jurisdiction over Mother. In her second point on appeal, Mother argues that the trial court did not have personal jurisdiction over her because "the [Prospective Adoptive Parents] failed to obtain proper service and provide notice to [Mother] since no summons was ever issued for the [adoption petition] that was filed on July 16, 2015." [Appellant's Brief, p. 26] Mother's third point on appeal challenges the service of the first amended petition. Mother asserts that service of the first amended petition was defective in that it did not comply with the requirements set forth in Rule 54.20(b)(1) for service of a summons

17

out of state.[7]   Thus, Mother claims that the service of the first amended petition did not confer personal jurisdiction over her.

"[P]ersonal jurisdiction refers . . . to the power of a court to require a person to respond to a legal proceeding that may affect the person's rights or interests." *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009).  "'[W]hen a court says that it lacks personal jurisdiction, it means simply that the constitutional principle of due process bars it from affecting the rights and interests of a particular person, whether such a 'person' be an individual or an entity such as a corporation." *Id.*  "Only by service of process authorized by statute or rule (or by appearance) can a court obtain jurisdiction to adjudicate the rights of a defendant." *Worley v. Worley*, 19 S.W.3d 127, 129 (Mo. banc 2000).  A defendant must raise any challenges to the trial court's personal jurisdiction, the sufficiency of process, and the sufficiency of service of process in either a pre-answer motion or as a defense in the answer.  Rule 55.27(g)(1); *Worley*, 19 S.W.3d at 129.  The failure to raise these issues at the first opportunity results in waiver of any challenges to the trial court's personal jurisdiction, the sufficiency of process, and the sufficiency of service of process.  Rule 55.27(g)(1); *see also Stiens v. Stiens*, 231 S.W.3d 195, 199 (Mo. App. W.D. 2007).

Mother asserts on appeal that she "promptly" raised the issue of the trial court's lack of personal jurisdiction in her answer to the second amended petition.  While we agree that

---

[7]Mother's point on appeal states that the service failed to comply with the requirements of "***section*** 54.20(b)(1)."  No such provision exists, but it is clear from the substance of Mother's brief that she intended to reference Rule 54.20(b)(1) and that any reference to section 54.20(b)(1) was inadvertent.  As such, we will refer to Rule 54.20(b)(1) while discussing Mother's third point on appeal.

18

the answer to the second amended petition included challenges to the trial court's personal jurisdiction over Mother, to the sufficiency of process, and to the sufficiency of the service of process, we disagree with Mother's characterization of the timing of her challenges as prompt in light of the other actions Mother took in the trial court.

"A defendant waives personal jurisdiction when he is before the court and fails to properly raise the issue." *Campbell v. Francis*, 258 S.W.3d 94, 98 n.1 (Mo. App. W.D. 2008). The defendant will have been deemed to have waived the issues of personal jurisdiction, sufficiency of process, and sufficiency of service of process when "the defendant takes or agrees to some step or proceeding in the suit, other than contesting jurisdiction, that is beneficial to the defendant." *Id.* In other words, "[i]f a party acts so as to recognize that a cause of action is pending and then takes steps that are clearly inconsistent with a lack of personal jurisdiction, the party waives his claim of lack of personal jurisdiction." *Bland v. IMCO Recycling, Inc.*, 67 S.W.3d 673, 679 (Mo. App. S.D. 2002).

Here, Mother filed an answer to the first amended petition in October 2016. The answer to the first amended petition made no reference to the trial court's lack of personal jurisdiction, to the sufficiency of process, or to the sufficiency of the service of process. Mother continued to participate in the termination of parental rights action following her answer to the first amended petition. Through her attorney, Mother responded to discovery requests, propounded discovery upon the Prospective Adoptive Parents, filed a motion to quash a pending deposition of Mother, applied for a continuance of the trial date, and sought sanctions against the Prospective Adoptive Parents prior to the filing of the second

19

amended petition. Only in her answer to the second amended petition did Mother challenge the trial court's personal jurisdiction, the sufficiency of process, and the sufficiency of service of process. At that point, Mother had already participated in the litigation, recognizing that the termination of parental rights action was pending and taking steps that were clearly inconsistent with a lack of personal jurisdiction. Thus, Mother waived her complaints as to the trial court's personal jurisdiction, the sufficiency of process, and the sufficiency of service of process.

Points Two and Three are denied.

### Point Four: Right to an Attorney in the Underlying Juvenile Matter

Mother's fourth point on appeal asserts that the trial court erred in terminating her parental rights because, in the underlying juvenile matter, she was not given notice of her right to counsel, she was not given an application for appointment of an attorney, she was not appointed an attorney for over two and a half years, and she went unrepresented to the adjudication hearing and subsequent case and permanency review hearings. Mother asserts that, as a result of these failures, she was denied due process of law in the underlying juvenile matter, which led to the termination of parental rights action. Mother's complaints regarding her right to an attorney are limited to the underlying juvenile matter and do not concern the termination of parental rights action.

Mother's fourth point on appeal is an impermissible collateral attack on the underlying juvenile matter. "'Where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or reversed or modified or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack.'" *In the*

20

*Interest of K.R.T.*, 505 S.W.3d 864, 868 (Mo. App. W.D. 2016) (quoting *Reimer v. Hayes*, 365 S.W.3d 280, 283 (Mo. App. W.D. 2012)). "Generally, a judgment must be challenged via direct appeal and not by a collateral attack." *Id.* If the judgment was rendered by a court that had both subject-matter jurisdiction and personal jurisdiction, then the judgment is not open to attack. *Id.*

Mother's fourth point on appeal does not challenge the trial court's subject matter jurisdiction or personal jurisdiction in the underlying juvenile matter. Instead, she simply objects to the trial court's alleged reluctance to appoint her an attorney. As such, Mother's fourth point on appeal is an impermissible collateral attack on the underlying juvenile matter, case number 1316-JU000703.

Point Four is denied.

***Point Five: Ineffective Assistance of Counsel in the Termination of Parental Rights Proceeding***

Mother's fifth point on appeal argues that she was denied due process of law because she did not receive effective assistance of counsel in the termination of parental rights action. Mother's complaint is twofold. She first asserts she was denied due process of law and was materially prejudiced when the trial court failed to issue a summons for the adoption petition because it resulted in the failure to give Mother notice of her right to counsel in the termination of parental rights action and in the failure to appoint counsel for Mother until nearly six months after the adoption petition was filed. Mother then argues that, when she was finally appointed counsel by the trial court, she received ineffective

21

assistance of counsel from appointed counsel. Mother's claim of ineffective assistance of counsel does not extend to the representation she received from trial counsel.

Section 211.462.2 provides, in relevant part:

> The parent . . . of the child shall be notified of the right to have counsel, and if they request counsel and are financially unable to employ counsel, counsel shall be appointed by the court. Notice of this provision shall be contained in the summons. . . .

"Failure to appoint counsel to represent the natural parents or to obtain an affirmative waiver of that right has been held to be reversible error." *In Interest of J.C., Jr.*, 781 S.W.2d 226, 228 (Mo. App. W.D. 1989). This statutory right to counsel includes an implied right to effective assistance of counsel. *In Interest of J.P.B.*, 509 S.W.3d 84, 97 (Mo. banc 2017). The test for effectiveness is "'whether the attorney was effective in providing his client with a meaningful hearing based on the record.'" *Id.* (quoting *In re W.J.S.M.*, 231 S.W.3d 278, 283-84 (Mo. App. E.D. 2007)).

Mother's position in the first part of this point on appeal is that it is reversible error for the trial court not to inform a parent of the right to counsel and not to appoint counsel immediately upon the initiation of the termination of parental rights action. Mother argues that the failure to issue a summons for the adoption petition resulted in a violation of section 211.462.2 so that the trial court committed reversible error. What her argument fails to appreciate is that, while the trial court failed to issue summons upon the filing of the adoption petition, no action was taken by the Prospective Adoptive Parents until *after* Mother was appointed counsel in January 2016. An additional seven months passed before the Prospective Adoptive Parents took any additional action in the termination of parental

22

rights action by filing the first amended petition. Mother asserts, without explaining how, that she was "materially prejudiced" as a result of the trial court's belated notice of the right to counsel and belated appointment of counsel in the termination of parental rights action. [Appellant's Brief, p. 45] We cannot fathom how Mother suffered material prejudice when no action took place in the termination of parental rights action until after the appointment of appointed counsel. While the trial court's failure to issue a summons that notified Mother of her right to counsel for the adoption petition may have been in violation of section 211.462.2, it was not reversible error, as the trial court's error did not materially affect the merits of the action. Rule 84.13(b) ("No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action.").

The second half of Mother's fifth point on appeal focuses on the assistance of counsel she received after the trial court appointed Mother's appointed counsel. Mother argues that appointed counsel was ineffective in that appointed counsel failed to object to the trial court's lack of personal jurisdiction due to improper out-of-state service; appointed counsel failed to file an answer to the adoption petition; and appointed counsel failed to engage diligently in discovery.

In *In the Interest of J.C., Jr.*, we found the following representation of parents in a termination of parental rights action to be ineffective:

> There was no oral testimony. At the hearing, their attorney was entirely passive. He stipulated to the wholesale admission of all reports and records despite the fact that there were many objections that could have been made to the reports and records. He waived the right to cross-examine the authors of the reports. He called no witnesses despite the fact that there were two

23

> witnesses there on the parties' behalf that expected to testify. Neither of the parents testified. They were not present in the courtroom, but were in the courthouse. He offered no medical reports or other evidence on behalf of the natural parents. The transcript of the hearing regarding termination consists of only eight pages. Regarding the attorney's fee, the attorney testified that he had spent only eight and a half hours on the case from start to finish. . . . It seems that it was a foregone conclusion to everyone involved at the termination hearing that the result would be the termination of [the father's and mother's] parental rights. This conclusion comes from a statement by the parents' attorney in which he stated: "I have talked to the father, . . . and he understands what we are doing. We explained to him the other alternative is the children would be put up for adoption, and they will never see the children. He understands that and I think to get them all in the courtroom would be disruptive to the [c]ourt and we wouldn't get anywhere." The right to counsel means nothing if the attorney does not advocate for his client and provide his client with a meaningful and adversarial hearing.

781 S.W.2d at 228-29. Essentially, we held that, while the parents were assigned representation, their assigned attorney was effectively absent during the proceedings so that the parents did not receive a meaningful hearing. *Id.*

Similarly, the Eastern District held in *In Interest of J.M.B.* that a mother did not receive effective assistance of counsel when "counsel did little . . . beyond appear for the hearing." 939 S.W.2d 53, 56 (Mo. App. E.D. 1997). In particular, the mother's counsel said nothing in response to the juvenile officer's insistence that the trial take place despite the mother's absence; made no objections during the direct examination of juvenile officer's only witness; asked that witness less than twelve questions on cross-examination, with only a few questions designed to elicit information favorable to the mother; presented no evidence on behalf of the mother, explaining that she had failed to contact him prior to trial; and offered no argument on the mother's behalf, explaining that he agreed that the mother's parental rights should be terminated. *Id.*

24

The representation the parents received in *In Interest of J.C., Jr.* and *In Interest of J.M.B.* is vastly different from the representation Mother received. While Mother may quarrel with the decisions that appointed counsel made while representing Mother, nothing in the record indicates that Mother did not receive a meaningful hearing as a result. In contrast, the record we were provided indicates that appointed counsel was an active participant in the litigation upon her appointment. While appointed counsel never filed an answer to the adoption petition despite obtaining leave to file to an answer the out of time, that failure resulted in no prejudice to Mother. Appointed counsel was otherwise an active participant in the termination of parental rights action on Mother's behalf. Appointed counsel timely filed an appropriate answer to the first amended petition, (the filing of which replaced the original petition). Appointed counsel then continued her representation of Mother through March 27, 2017. During that time, appointed counsel responded to discovery requests, propounded discovery upon the Prospective Adoptive Parents, and filed a motion to quash the pending deposition of Mother. On March 27, 2017, trial counsel took over as Mother's counsel and represented her through the fourteen-day trial that took place over the course of nine months, spanning from October 19, 2017, to June 29, 2018. Trial counsel had approximately six months before the commencement of trial to remedy any alleged deficiencies in appointed counsel's representation of Mother. During the course of the trial, trial counsel zealously cross-examined each of the Prospective Adoptive Parents' witnesses and the Juvenile Officer's witness, and trial counsel called several witnesses to support their position that terminating Mother's parental rights was not

25

appropriate. As such, we cannot conclude, based on the record, that Mother did not receive a meaningful hearing, or that appointed counsel's representation of Mother was ineffective.

Point Five is denied.

### *Point Six: Trial Court's Consideration of Mother's Mental Condition as a Basis for Terminating Her Parental Rights*

Mother's sixth point on appeal argues that the trial court improperly considered Mother's "mental condition" as a basis for terminating her parental rights because it was not pleaded as a basis for termination in the second amended petition.[8] Mother asserts that, because her mental condition was not pleaded as a basis for terminating her parental rights, the trial court's consideration of that basis deprived her of the right to be informed of the allegations against her. Mother claims that, because she was not put on notice that her mental condition was a potential basis for terminating her parental rights, she was ill prepared to respond to the testimony of Dr. Gregory Sisk ("Dr. Sisk"), the clinical psychologist who conducted a psychological evaluation of Mother.

Mother is correct that "'[d]ue process requires that [t]he petition in a termination of parental rights case should contain allegations likely to inform those persons involved of the charges, to the end that objection may be prepared.'" *In re S.M.H.*, 160 S.W.3d 355, 366 (Mo. banc 2005) (quoting *In Interest of H.R.R.*, 945 S.W.2d 85, 88 (Mo. App. W.D. 1997)). A trial court commits reversible error if it terminates a parent's parental rights on

---

[8]Mother's point on appeal argues that her mental condition was not pleaded in the adoption petition, the first amended petition, or the second amended petition. Mother's point on appeal is unnecessarily broad because "[o]nce an amended pleading is filed, any prior pleadings not referred to or incorporated into the new pleading are considered abandoned and receive no further consideration in the case for any purpose." *State ex rel. Bugg v. Roper*, 179 S.W.3d 893, 894 (Mo. banc 2005). As such, our review of this point on appeal will be limited to the allegations set forth in the second amended petition.

a basis not pleaded in the petition. *Id.* at 365-66. "An exception exists to the rule that parental rights cannot be terminated on grounds not contained in the petition, where the additional grounds are tried by consent," meaning that "the evidence bears solely on an unpleaded issue and is admitted without objection." *Id.* at 366.

It is true that the second amended petition did not allege Mother's mental condition as an independent basis for terminating her parental rights. However, the trial court did not terminate Mother's parental rights on this basis. The trial court's findings on Mother's mental condition were made in the required context of the pleaded bases for termination. The second amended petition alleged four bases for terminating Mother's parental rights: (1) that, pursuant to section 211.447.5(1)(b), Mother had abandoned the Child for a period of at least six months; (2) that, pursuant to section 211.447.5(2), the Child has been abused or neglected; (3) that, pursuant to section 211.447.5(3), the Child has been under the jurisdiction of the juvenile court for a period of one year and the conditions that led to the assumption of jurisdiction still persist, and there is little likelihood that those conditions will be remedied so that the Child can be returned to the care of Mother in the near future; and (4) that, pursuant to section 211.447.6, Mother is unfit to be a party to the parent-child relationship. The Judgment's findings and conclusions referencing Mother's mental condition simply followed the mandate of sections 211.447.5(2) and (3), two of the bases for terminating Mother's parental rights alleged in the second amended petition.

Sections 211.447.5(2) and (3) provide, in relevant part:

The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:

27

. . .

(2) The child has been abused or neglected. In determining whether to terminate parental rights pursuant to this subdivision, *the court shall consider and make findings on the following conditions and acts of the parent*:

(a) A *mental condition* which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

. . .

(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, *the court shall consider and make findings on the following*:

. . .

(c) A *mental condition* which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary car, custody and control . . . .

Sections 211.447.5(2) and (3), if pleaded as a basis for terminating parental rights, require the trial court to consider and make findings on a parent's mental condition. *See In re B.H.*, 348 S.W.3d 770, 774 (Mo. banc 2011) ("Section 211.447.5(2) requires the trial court to make specific findings regarding the conditions or acts listed in the statute when determining whether or not the statutory ground of abuse or neglect for termination of parental rights exists."). However, those factors enumerated in section 211.447.5(2) about

28

which that the trial court must make findings "'are simply categories of evidence to be considered along with other relevant evidence, rather than separate grounds for termination in and of themselves.'" *In Interest of J.A.F.*, 570 S.W.3d 77, 83 (Mo. App. W.D. 2019) (quoting *T.T.G. v. K.S.G.*, 530 S.W.3d 489, 495 (Mo. banc 2017)). Similarly, the factors set forth in section 211.447.5(3) simply "provide an organizational framework through which the trial court examines much of the evidence in order to determine whether the parent has failed to remedy a condition, and whether that failure is likely to continue." *In re L.J.D.*, 352 S.W.3d 658, 674 (Mo. App. E.D. 2011).

Sections 211.447.5(2) and (3) clearly required the trial court to make explicit findings on Mother's mental condition based on the evidence it had before it. Here, Dr. Sisk testified about the findings of the psychological examination he conducted on Mother without objection by Mother challenging the relevance of Dr. Sisk's testimony. By failing to object to his testimony, Mother consented to the trial court's consideration of and subsequent findings on the subject as required by sections 211.447.5(2) and (3). More to the point, as Mother was on notice that sections 211.447.5(2) and (3) had been pleaded as bases to terminate her parental rights, she was equally on notice of the statutory categories of evidence deemed relevant to those bases for termination.

Point Six is denied.

### Point Seven: Performance of the Child's Guardian Ad Litem

Mother's seventh and final point on appeal argues that the trial court erred in terminating Mother's parental rights because the Child's guardian ad litem failed to discharge her duty to conduct a diligent and independent investigation on behalf of the

Child's best interests. To support her position, Mother cites the guardian ad litem's failure to investigate the friend with whom Mother had initially left the Child, Mother's family members, and the Prospective Adoptive Parents before the Child's placement with the Prospective Adoptive Parents; the guardian ad litem's failure to interview Mother; the guardian ad litem's failure to visit the Child in the Prospective Adoptive Parents' home more than two times; the guardian ad litem's failure to inform the trial court of E.R.'s criminal background prior to the Child's placement or prior to the trial court's ruling on Mother's motion for drug testing of the Prospective Adoptive Parents; the guardian ad litem's failure, after the Prospective Adoptive Parents tested positive for marijuana use, to ask the Child whether he felt safe in the home or whether he witnessed the Prospective Adoptive Parents engage in drug use; and the guardian ad litem's failure to preserve the Child's relationship with Mother until he said he wanted to see Mother. Mother asserts that the guardian ad litem's failure to discharge her duties constitutes reversible error.

Section 211.462.1 provides that "[i]n all actions to terminate parental rights, if not previously appointed [in an abuse and neglect proceeding], a guardian ad litem shall be appointed for the child as soon as practicable after the filing of the petition." During the course of termination of parental rights actions, the guardian ad litem must:

> (1) Be the legal representative of the child, and may examine, cross examine, subpoena witnesses and offer testimony. The guardian ad litem may also initiate an appeal of any disposition that he determines to be adverse to the best interests of the child;

> (2) Be an advocate for the child during the dispositional hearing and aid in securing a permanent placement plan for the child. To ascertain the child's wishes, feelings, attachments, and attitudes, he shall conduct all necessary

30

interviews with persons, other than the parent, having contact with or knowledge of the child and, if appropriate, with the child;

(3) Protect the rights, interest and welfare of a minor or incompetent parent by exercising the powers and duties enumerated in subdivisions (1) and (2) of this subsection.

Section 211.462.3. The statutory authority and duties of the guardian ad litem are set forth in section 211.462 "in order to make clear that the guardian ad litem is not limited to being a mere observer who bases a recommendation only upon what he or she has observed." *In Interest of J.P.*, 947 S.W.2d 442, 446 (Mo. App. W.D. 1997).

First, we observe that some of Mother's allegations regarding the guardian ad litem's representation of the Child are not applicable to the termination of parental rights action and are instead a challenge to the guardian ad litem's representation of the Child in the underlying juvenile matter. Any complaints Mother has about the guardian ad litem's failure to investigate the friend with whom Mother initially left the Child, Mother's family members, and the Prospective Adoptive Parents before the Child's placement; about the guardian ad litem's failure to inform the trial court of E.R.'s criminal background prior to placement; and about the guardian ad litem's actions after the Prospective Adoptive Parents tested positive for marijuana are complaints that relate to placement of the Child, not to the termination of Mother's parental rights. *See In re M.O.*, 70 S.W.3d 579, 588 (Mo. App. W.D. 2002) ("[T]he court is not to consider the quality of a particular adoptive home" when terminating parental rights.). We have already explained that the underlying juvenile matter addressing placement of the Child cannot be collaterally attacked in this proceeding.

31

Further, to the extent that Mother's remaining complaints about the guardian ad litem's representation of the Child pertain to the termination of parental rights action and are supported by the record, Mother has not explained how she was prejudiced. We have previously concluded that a guardian ad litem's complete failure to conduct any investigation or interviews with people who have contact with a child and a failure to make a recommendation to the trial court deprives the court of "complete information on which the trial court could base its decision" so that reversal is necessary. *Baumgart v. Baumgart*, 944 S.W.2d 572, 579 (Mo. App. W.D. 1997). Mother makes no such allegation here. Instead, Mother expresses her dissatisfaction with the guardian ad litem's representation of the Child without explaining what evidence, if any, the trial court would have had before it had the guardian ad litem conducted her investigation as Mother believes was necessary. As such, even if we accept Mother's premise that the guardian ad litem for the Child did not satisfy the requirements set forth in section 211.462.3, we would not be permitted to reverse the Judgment. *See* Rule 84.13(b) ("No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action.").

Point Seven is denied.

## Motion for Attorney's Fees Pending Appeal

Local Rule 29 requires that "[a]ny party claiming an amount due for attorney's fees on appeal pursuant to contract, statute or otherwise and which this Court has jurisdiction to consider, must file a separate written motion before submission of the cause." Mother has done so here, filing a motion pursuant to 13 CSR 40-30.020(2)(D), for attorney's fees

in excess of the regulatory maximum. The regulatory maximum compensation for a contested trial is $7,000, and the regulatory maximum for representation in an appellate court is $3,500. 13 CSR 40-30.020(2)(B). While it is appropriate for an appellate court to consider the issue of attorney's fees, we may only do so when the record is sufficiently developed. *In re C.W.*, 257 S.W.3d 155, 159 (Mo. App. E.D. 2008). There is no evidence in the record that would allow us to evaluate the value of services Mother's counsel provided. As such, "[t]he trial court is better positioned to receive the arguments and evidence we currently lack, and is considered an expert on the question of attorney fees." *In the Interest of I.K.H.*, 566 S.W.3d 629, 633 (Mo. App. S.D. 2018). Though we affirm the trial court's Judgment, we remand this case to the trial court for consideration of mother's pending motion for attorney's fees in excess of the regulatory maximum.

## Conclusion

We affirm the trial court's Judgment and remand this matter to the trial court for consideration of Mother's motion for attorney's fees in excess of the regulatory maximum.

_____
Cynthia L. Martin, Judge

All concur